UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **NORTH AMERICAN LAND DEVELOPMENT CORP., ET AL.** | **CIV. ACTION NO. 3:23-00452** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JACK RALPH HAKIM, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for lack of personal jurisdiction [doc. # 28] filed by Defendant, Grace Hakim. The motion is opposed. For reasons that follow, it is recommended that Grace Hakim's motion to dismiss for lack of personal jurisdiction be GRANTED. It is further recommended that Plaintiffs' alternative request to transfer their claims against Grace Hakim to the United States District Court for the Southern District of Florida be DENIED.

### Background

On April 6, 2023, Plaintiffs North American Land Development Corporation ("NALD"), Luv n' care, Ltd. ("LNC"), Nouri E. Hakim ("Eddie"), and Joseph H. Hakim ("Joseph") (collectively, "Plaintiffs") filed the instant breach of contract suit against Eddie and Joseph's brother, Jack Hakim ("Jack"). (Compl. [doc. # 1]). On August 16, 2023, Plaintiffs filed an amended complaint that joined Jack's now former spouse,[1] Grace Hakim ("Grace"), as an additional Defendant, and added a claim for unjust enrichment. (Amend. Compl. [doc. # 20]). Because the amended complaint neither adopted nor incorporated by reference the earlier pleading, the amended

---

[1] *See* Affidavit of Grace Hakim; M/Dismiss, Exh. [doc. # 28-2].

complaint became the operative pleading in the case.[2] For ease of reference, the court will refer to the Amended Complaint as the "Complaint," and cite to it as "Compl."

According to the Complaint, Eddie, Joseph, and Jack founded NALD and LNC. (Compl., ¶ 12). As part of his role with the family business(es), Jack was required to travel frequently, and it often was in LNC's interest to have Grace accompany Jack to help him on his company-related ventures. *Id.*, ¶ 11. In 2012, the Plaintiffs and Jack entered into a written contract to govern how certain payments made by Plaintiffs on Jack and Grace's behalf were to be handled. *Id.*, ¶ 12. Pursuant to the contract, Plaintiffs agreed to pay only those personal expenses that they expressly authorized. *Id.*, ¶ 13. Consequently, the contract specified that Jack and Grace were to reimburse Plaintiffs for any unauthorized personal expenses that were paid by Plaintiffs on their behalf. *Id.*

Relatedly, Jack and Grace received LNC-issued credit cards that were to be used only for company business expenses. *Id.*, ¶ 14. Nonetheless, Jack and Grace proceeded to use the credit cards for personal expenses that LNC paid, but for which it never was reimbursed. *Id.* Plaintiffs also made additional payments to Jack and Grace to cover other personal expenses that were subject to reimbursement under the parties' contract. *Id.*, ¶ 17.

In addition, NALD made advance payments for certain expenses related to Jack and Grace's personal residence, which were subject to reimbursement under the parties' contract. *Id.*, ¶¶ 15-16. Ultimately, Plaintiffs paid over $1 million of Jack and Grace's personal expenses for which they have not been reimbursed. *Id.*

---

[2] An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).

In December 2020 and January 2021, Plaintiffs transmitted demand letters to Jack and Grace for repayment of the $ 1+ million that was due under the contract.  *Id*., ¶¶ 18-19.  When the funds were not forthcoming, litigation ensued.  In this, the most recent iteration of Plaintiffs' recoupment efforts,[3] Plaintiffs have asserted claims for breach of contract, or, in the alternative, for unjust enrichment.  *Id*., ¶¶ 20-31.  They seek a money judgment for $1,766,398.59, plus reasonable attorneys' fees, costs, expenses, and interest.  *Id*., Prayer.

Following an initial procedural oversight,[4] Jack answered the complaint and the amended complaint.  (Answers [doc. #s 17 & 24]).

On September 26, 2023, Grace filed the instant, Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.[5]  [doc. # 28].

On December 11, 2023, Plaintiffs filed their opposition to the motion to dismiss.  (Pl. Opp. Memo. [doc. # 35]).[6]  They contend that the court may exercise specific personal jurisdiction over Grace for the purpose of their "unjust enrichment" claim against her.  *Id*., pgs. 4-5.  However, in the event that the court were to conclude that it may not exercise personal jurisdiction over Grace, Plaintiffs asked that "the claims directed to Grace be transferred pursuant to 28 U.S.C. § 1631 to the

---

[3] *See Luv N Care Ltd. v. Hakim*, Civ. Action No. 21-0739 (W. D. La.); *North American Land Development Corp. v. Hakim*, Civ. Action No. 21-0740 (W. D. La.).

[4] *See* M/Set Aside Default Judgment [doc. # 11].

[5] Although the title of Grace's motion to dismiss also included a citation to Rule 12(b)(5), she since has clarified that her motion seeks dismissal solely for lack of personal jurisdiction.  *See* Opp. Memo., pg. 1 n.1 [doc. # 31].

[6] Plaintiffs previously petitioned the court, without success, for leave to conduct jurisdictional discovery.  *See* doc. #s 30-32.

3

United States District Court for the Southern District of Florida where Grace contends she is domiciled." *Id*., pg. 10.

Grace filed her reply brief on December 18, 2023. (Def.'s Reply [doc. # 36]). Accordingly, the matter is ripe.

## **Personal Jurisdiction**

**I.     Law**

When a defendant timely questions a federal district court's *in personam* jurisdiction, the plaintiff has the burden of proving that the court has jurisdiction over the defendant. *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831B32 (5th Cir. 1986), *on reh'g in part*, 836 F.2d 850 (5th Cir. 1988) (citations omitted); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (citation omitted) (plaintiff's burden to establish personal jurisdiction).

If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiff only need make a prima facie showing of the jurisdictional facts. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). In assessing whether plaintiffs have made a prima facie showing, the court "must accept as true [the plaintiffs'] uncontroverted allegations, and resolve in [their] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id*.  (citation and internal quotation marks omitted).[7]   However, the court need not credit plaintiffs'

---

[7]  Of course, even if a plaintiff were to defeat a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, then the plaintiff still must prove the jurisdictional facts at trial by a preponderance of the evidence. *Travelers Indem. Co., supra*.

conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted).

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as, (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not transgress due process protections under the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. *See* LA. R.S. § 13:3201(B); LA. CODE CIV. P. ART. 6(B). Therefore, the sole inquiry is whether exercising *in personam* jurisdiction over the defendant comports with federal due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citation omitted).

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923; 131 S.Ct. 2846, 2853 (2011) ("*Goodyear*") (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316; 66 S.Ct. 154 (1945)). In the years following its landmark decision in *International Shoe*, the Supreme Court has "differentiated between *general* or all-purpose jurisdiction, and *specific* or case-linked jurisdiction." *Goodyear,* 564 U.S. at 919 (emphasis added); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 582 U.S. 255, 137 S.Ct. 1773, 1780 (2017) (emphasis added).

For an individual, the paradigm forum for the exercise of general jurisdiction is the

individual's domicile . . ." *Goodyear,* 564 U.S. at 924; 131 S.Ct. at 2853–54 (citation omitted). It is uncontested that Grace's domicile lies in Florida. Accordingly, general jurisdiction is unavailable in this Louisiana forum. Consistent with the foregoing circumstance, Plaintiffs argue solely that this court may exercise specific jurisdiction for their unjust enrichment claim against Grace.

It is manifest that "[s]pecific" jurisdiction exists when the "plaintiff's cause of action . . . arises out of or results from the defendant's forum-related contacts." *Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C.*, 612 F.3d 390, 392 (5th Cir. 2010). Stated differently, "[s]pecific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (quoted source and internal quotation marks omitted). Specific jurisdiction is a claim-specific inquiry. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). Thus, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.*; *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal,* 971 F.3d 485, 490 (5th Cir. 2020) (quoting *Seiferth*, 472 F.3d at 271). If the plaintiff can successfully establish the first two prongs, then the burden

6

shifts to defendant to show that exercising jurisdiction would prove unfair or unreasonable. *Id*.

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden,* 571 U.S. at 284. The court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id*. (citation omitted). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on h[er] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [s]he makes by interacting with other persons affiliated with the State." *Walden,* 571 U.S. at 286 (citation omitted).

## II. Evidence Presented

In support of her motion, Grace submitted an affidavit wherein she averred that,

(1) She is domiciled in Florida and, for the majority of the period from 1979-2023, resided in New Jersey or Florida.

(2) She never was formally employed by NALD, LNC, or any affiliated corporate entity.

(3) While she assisted Jack with his sales calls and company trade shows, such business was directed toward, and performed in, New York and New Jersey from 1978-2003.

(4) She neither provided assistance, nor performed quasi-business activity on behalf of NALD, LNC, et al., since 2006-2007.

(5) With regard to the subject matter of this litigation, she was never party to a contract in Louisiana, or otherwise entered into a contract that required performance in Louisiana, or application of Louisiana law.

(6) She has not lived in Louisiana since 1979 and last visited the state in 2017 to attend her niece's wedding.

(Grace Hakim Affidavit; M/Dismiss, Exh. [doc. # 28-2]).

In response, Plaintiffs submitted two declarations from Joseph Hakim, with attached records.

In Joseph's original declaration dated October 17, 2023, he largely echoed the allegations in the Complaint, and conveyed his belief that Grace owns substantial real property in Louisiana that causes her to conduct substantial business pertaining to those properties in this state. (Oct. 17, 2023 Decl. of Joseph Hakim ("Joseph I"); Pl.s' Opp. Memo., Exh. 7 [doc. # 35-1]).[8] Joseph confirmed that he, Eddie, and Jack entered into the subject contract in 2012 in Louisiana where he, Eddie, LNC, and NALD were citizens. *Id.* Pursuant to the contract, Jack and Grace received credit cards that were issued to LNC, with the proviso that they were to reimburse NALD and LNC for any unauthorized personal expenses paid by NALD and LNC. *Id.* Each month, Jack and Grace were required to review the credit card account statements to segregate personal charges from business-related expenses. *Id.* All of the credit cards were issued to Jack and Grace from Louisiana, with the billing directed to Louisiana, and insofar as Jack and Grace ever provided a breakdown of personal versus business-related charges, those identifications were delivered to Monroe, Louisiana. *Id.* Any reimbursements they may have made were remitted to Monroe, Louisiana. *Id.*

In Joseph's second declaration dated December 11, 2023, he averred that LNC and NALD are now and have always been Louisiana corporations headquartered in Monroe Louisiana. (Dec. 11, 2023 Decl. of Joseph Hakim ("Joseph II"); Pl.s' Opp. Memo., Exh. 8 [doc. # 35-2]). Beginning in 2008 and continuing through 2019, LNC provided Grace with LNC-

---

[8] Joseph also attached a copy of conveyance records from the Ouachita Parish Clerk of Court, plus an Exchange Deed from 2009, to which Grace was a party. *Id.*

issued credit cards on condition that she reimburse LNC for any personal expenses she charged to the cards. *Id.* The credit cards were issued to LNC in Louisiana where LNC always has operated its business. *Id*. For the most part, the account statements were sent to LNC in Monroe Louisiana, but some early account statements were sent directly to Grace in New Jersey, whereupon she would forward them to LNC in Louisiana for payment. *Id*. The credit cards issued to Grace were to be used for company business such as travel expenses. *Id*. She also was authorized to use the credit cards for medical expenses. *Id*.

Joseph attached to his declaration a summary of the credit card account statements detailing the charges paid by LNC on Grace's behalf. *See* Statements; Pl.s' Opp. Memo., Exhs. 9-21 [doc. # 35-9-21]. LNC paid all the credit card charges, including Grace's personal charges, shown on the attached exhibits. *Id*. All of the credit cards were issued to Grace from Louisiana and were governed by Louisiana law. *Id*. The billing, except for five statements in 2008, was directed to Louisiana. *Id.*

With regard to NALD, Jack and Grace made numerous requests for advance payments for various expenses relating to their personal residence, which were subject to reimbursement. *Id*. The requested payments were made by NALD in Louisiana and the payments were drawn on a Louisiana bank. *Id*. Most of the expenses paid by NALD have not been reimbursed by Jack or Grace. *Id*. Grace knew that the payments made by LNC and NALD were made from Monroe, Louisiana and that she was to reimburse LNC and NALD in Monroe Louisiana. *Id*.

Finally, LNC and NALD have been directly impoverished in Monroe, Louisiana by Grace's enrichment through her retention of the benefits she received from the unreimbursed payments LNC and NALD made on her behalf. *Id*.

9

**III.    Discussion**

As stated above, Plaintiffs' claim against Grace is one for unjust enrichment.[9] The Louisiana Supreme Court has endorsed five requirements for an unjust enrichment claim:

> (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff.

*Carriere v. Bank of Louisiana*, 702 So.2d 648, 671 (La. 1996), *on reh'g* (Nov. 3, 1997); *see also Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 291 (5th Cir. 2024).

Succinctly restated, Plaintiffs contend that, for over ten years, they loaned Grace money from Louisiana via credit cards issued to a Louisiana company, which Grace used on authorized and unauthorized expenses incurred in other states, without reconciling the charges and repaying the advances for personal expenses, thereby causing Plaintiffs to experience a loss in Louisiana.

---

[9] The Louisiana Civil Code provides that,

> [a] person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
>
> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

LA. CIV. CODE ART. 2298.

In addition, Grace solicited advance payments from a Louisiana company for expenses relating to her personal residence in another state. For the purpose of this motion, the court will credit Plaintiffs' allegations: (1) that Grace knew that Plaintiffs' credit card payments emanated from Louisiana, (2) that, insofar as reimbursement was due, it was to be sent to Louisiana, and (3) that Plaintiffs' impoverishment was felt in Louisiana. However, Plaintiffs do not allege that Grace ever actually provided them with a reconciliation of her business versus personal expenses or that she ever reimbursed Plaintiffs for any expenses. *See* Joseph Decl. II ("To the extent that Grace provided any identifications of business and personal charges . . . Any reimbursements that were made . . .").[10]

The court is not persuaded that the foregoing activities by Grace, even buttressed by the allegations contained in the Complaint and the two Joseph declarations, suffice to establish Grace's purposeful availment of the benefits of the forum state. Plaintiffs' unjust enrichment claim against Grace is quasi-contractual. *Canal/Claiborne, Ltd. v. Stonehedge Dev., LLC*, 156 So.3d 627, 632 (La. 2014). However, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Ultrachem, LLC v. Zarotech S.A. de C.V.*, Civ. Action No. 23-0998, 2023 WL 7096463, at *3 (W.D. La. Oct. 11, 2023), *R&R adopted*, 2023 WL 7096869 (W.D. La. Oct. 26, 2023) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). Furthermore,

> the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

---

[10] Even if Plaintiffs had so alleged, that would not change the outcome.

11

*Id.* (quoting *Freudensprung, supra*); *see also Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985).

Particularly instructive is the Fifth Circuit decision in *Stuart v. Spademan*, 772 F.2d 1185, 1188 (5th Cir. 1985). In that case, the non-forum domiciled defendant had the following contacts with the forum state (Texas): he sent sample products to plaintiffs in Texas; he executed an agreement and amended agreement with the plaintiffs whom he knew to be domiciled in Texas; the agreements were executed by plaintiffs in Texas; the agreement required plaintiffs to assist defendant with further patent applications; the agreement obligated the defendant to make payments directly to plaintiffs' bank accounts in Texas; the defendant proceeded to make annual payments to plaintiffs' bank account in Texas *over an eight-year period*; when defendant discontinued payments, the plaintiffs declared the entire indebtedness mature under the terms of the agreement; and the agreement included a choice of law provision that incorporated the laws of the state where the aggrieved party resided, i.e., Texas. *Id.* In holding that the foregoing contacts were constitutionally insufficient to support the exercise of jurisdiction over the non-resident defendant, the court discounted, *inter alia*, the continuing nature of the parties' reciprocal obligations and the significance of mailing of payments to the forum state. *Id.* Moreover, there was no discussion of the impoverishment suffered by plaintiffs in Texas as a result of defendant's decision to cease remitting payments to Texas. *Id.*

In *Holt Oil & Gas Corp. v. Harvey*, the Fifth Circuit characterized the following contacts as "limited" and insufficient to support an exercise of specific jurisdiction: (1) defendant entered into a contract with a Texas plaintiff; (2) defendant sent a final revised joint operating agreement from Oklahoma to Texas; (3) defendant sent three checks from Oklahoma to Texas in partial performance

12

of its contractual obligations; and (4) defendant engaged in extensive telephonic and written communication with plaintiff. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

In *Libersat v. Sundance Energy, Incorporated*, the Fifth Circuit found no specific jurisdiction in Louisiana where the defendants: "(1) assumed a contract with a Louisiana resident, (2) sent division orders to Louisiana, (3) sent checks to Louisiana, and (4) engaged in written communication with the plaintiffs, who lived in Louisiana." *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 322 (5th Cir. 2020). Another point of interest in *Libersat* is that the plaintiff urged the court to exercise personal jurisdiction over the non-resident defendants because they purportedly committed the intentional tort of conversion that harmed him in Louisiana. *Id*. The court stressed, however, that to establish personal jurisdiction pursuant to the tort of conversion, the wrongful exercise of dominion and control over another's property, such as plaintiff's money, must have occurred in the forum state. *Id*. (citing *Jones v. Artists Rights Enf't Corp.*, 789 F. App'x 423, 427 (5th Cir. 2019)).

Grace's claim-related contacts with Louisiana are no greater than those considered insufficient to confer jurisdiction in the foregoing cases. Plaintiffs do not allege that Grace was an actual party to any contract or agreement with them. Indeed, by asserting a claim for unjust enrichment claim against Grace, Plaintiffs necessarily admit that they have no other remedy at law against her. *See Carriere*, 702 So.2d at 671. Further, all expenses that Grace incurred on the LNC-issued credit cards were made outside the State of Louisiana. Because Grace has not lived in Louisiana since the 1970s, the advances that NALD provided to Grace for her personal residence necessarily were to cover expenses in New Jersey or Florida where she resided.

Insofar as Grace was obliged to reconcile monthly credit card statements and reimburse Plaintiffs for her personal expenses in Louisiana, the Fifth Circuit consistently had held that the

13

remittance of payments to the forum state does not suffice to confer personal jurisdiction. *See Libersat,* 978 F.3d at 322 ; *Stuart,* 772 F.2d at 1188; *see also Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (no specific jurisdiction in Texas over Alaska company that agreed to purchase goods that it knew were to be manufactured by a Texas company in Texas, but no performance by the Alaska company was to take place in Texas "other than perhaps the payment for the goods"). Certainly, if the transmission of payments to the forum state does not confer specific jurisdiction, then the non-resident defendant's failure to remit payments does not do so either.

Ultimately, Plaintiffs rely on the effects of Grace's actions (or inaction), which have caused them to suffer an impoverishment in Louisiana. They also stress that Grace knew that Plaintiffs were located in Louisiana, that the funds originated in Louisiana from Louisiana banks, and that Plaintiffs would suffer harm in Louisiana. While Plaintiffs understandably emphasize that the inverse effects of Grace's enrichment in New Jersey or Florida were felt by them in Louisiana, the focus for an unjust enrichment remains whether the defendant purposefully availed herself of the privilege of conducting activities within the forum state. *Crownover v. Crownover*, Civ. Action No. 15-0132, 2016 WL 11522978, at *10 (W.D. Tex. Sept. 20, 2016) (citing, *inter alia*, *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221 (5th Cir. 2012)).

Not unlike the conversion claim at issue in *Libersat, supra*, Plaintiffs contend that Grace is wrongfully refusing to reimburse them for funds that they advanced her. However, Grace's expenditure of Plaintiffs' funds occurred in other states, for items or services in those other states. The fact that the expenditures caused Plaintiffs to suffer an impoverishment in Louisiana (and Grace's presumed knowledge of same) is insufficient to confer personal jurisdiction over her. *See*

*Libersat, supra* (discussing conversion claim); *Crownover, supra* (defendant's refusal to pay took place outside of the forum and does not confer specific personal jurisdiction for plaintiff's unjust enrichment claim); *Renoir v. Hantman's Associates, Inc.*, 230 Fed. App'x 357, 360 (5th Cir. 2007) ("focusing on where a defendant allegedly directed a tort incorrectly emphasizes the relationship among the *plaintiff,* the forum, and the litigation, rather than among the *defendant,* the forum, and the litigation").

In sum, the court finds that Plaintiffs have not made a prima facie showing of minimum contacts sufficient to find that Grace purposefully availed herself of the benefits and protections of doing business in Louisiana as required to support the exercise of personal jurisdiction.[11] *Id.* (no specific jurisdiction where: the non-resident defendant negotiated and contracted remotely with the plaintiffs who were located in Texas; defendant made a lone visit to Texas to address a discrepancy in the items received under the contract; and the contract included a choice-of-law provision specifying Texas law).

Absent requisite minimum contacts, the court need not consider whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice *Id*.

## Transfer

Plaintiffs alternatively ask the court essentially to sever their claim(s) against Grace and to transfer it, pursuant to 28 U.S.C. § 1631, to the Southern District of Florida, where she is domiciled. Under § 1631, when a court finds "a want of" personal or subject matter

---

[11] Insofar as Plaintiffs endeavor to support jurisdiction via Grace's non-claim-related contacts with Louisiana, it is manifest that those activities cannot be used to establish minimum contracts for specific personal jurisdiction. *Libersat*, 978 F.3d at 321.

jurisdiction,[12] it shall, if it is in the interest of justice, transfer the action to any other court in which the action could have been brought at the time it was filed. The Fifth Circuit has recognized that, "§ 1631 . . . was specifically designed to protect federal litigants from the forfeiture that could result from a statute of limitations running after a plaintiff's mistakenly filing an action in a court that lacks jurisdiction *when the interests of justice so demand . . .*" *Franco, supra* (emphasis added). Thus, transfer is required under § 1631 when three conditions are met: "(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Arias v. Mercedes-Benz USA, LLC*, 2021 WL 1206600, at *5 (M.D. La. Mar. 30, 2021) (citations omitted).

The court is not persuaded that the severance and transfer of Plaintiffs' lone claim against Grace for unjust enrichment is in the interest of justice. First, in Louisiana, an action for unjust enrichment is subject to a ten-year prescriptive period. *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (citing, *inter alia*, LA. CIV. CODE ART. 3499). Therefore, by having to re-file the suit against Grace, Plaintiffs might lose, at most, up to one-year's worth of unreimbursed credit card expenditures.

More importantly, however, it is manifest that a claim for unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 241, 242 (La. 2010) (citation omitted). "Furthermore, the remedy provided by unjust enrichment is precluded where the available remedy at law is against

---

[12] *See Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 795 (5th Cir. 2021) ("jurisdiction" in § 1631 encompasses both subject-matter and personal jurisdiction).

someone other than the person against whom the claim is presently asserted." *Zaveri v. Condor Petroleum Corp.*, 27 F.Supp.3d 695, 700 (W.D. La. 2014) (citation omitted). In addition, a claim for unjust enrichment cannot be pled in the alternative. *Id.* (collecting cases); *Wiggins v. Chesapeake Energy Corp.*, Civ. Action No. 12-0541, 2012 WL 3597131, at *3 (W.D. La. Aug. 20, 2012) (citation omitted); *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 291 (5th Cir. 2024) (a plaintiff in Louisiana generally may not plead a claim for unjust enrichment alongside another legal theory). Here, Plaintiffs have sued Grace's former husband, Jack, for breach of contract. Consequently, they are precluded from asserting a claim for unjust enrichment against Grace.

The "interest of justice" is not served by the transfer of a non-viable, futile claim. *Lijadu v. I.N.S.*, Civ. Action No. 06-0518, 2007 WL 2479638, at *3 (W.D. La. July 17, 2007) (transfer of futile claim is not warranted); *Baker v. State of Texas*, Civ. Action No. 16-0008, 2016 WL 625090, at *2 (S.D. Tex. Jan. 13, 2016), *R&R adopted,* 2016 WL 631427 (S.D. Tex. Feb. 16, 2016) (not in interest of justice to transfer a petition that fails to state a claim for relief); *Dusharme v. Woodcroft*, Civ. Action No. 11-86, 2011 WL 2976856, at *3 (W.D. La. June 8, 2011), *R&R adopted,* 2011 WL 2942604 (W.D. La. July 20, 2011) (same). Accordingly, transfer is not available or warranted.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the motion to dismiss for lack of personal jurisdiction [doc. # 28] filed by Defendant, Grace Hakim, be GRANTED, and that Plaintiffs' claim(s) against said Defendant only be DISMISSED WITHOUT PREJUDICE. FED. R. CIV. P. 12(b)(2).

IT IS FURTHER RECOMMENDED that Plaintiffs' alternative request to transfer their claim(s) against Defendant, Grace Hakim, to the United States District Court for the Southern District of Florida be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 11th day of April, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE